DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ROBERT W. ALVAREZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D16-802

[February 14, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Charles E. Burton, Judge; L.T. Case No. 50-2011-CF-000223-BXXX-MB.

Valarie Linnen, Atlantic Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Senior Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Robert W. Alvarez appeals his convictions and three life sentences after a trial by jury. On appeal, he raises two issues: the trial court erred by (1) denying his motion for judgment of acquittal where the evidence against him was wholly circumstantial, and (2) improperly allowing gruesome photographs into evidence. We affirm without discussion the second issue and explain our affirmance on the first issue.

*Background*

Alvarez and a codefendant were indicted for two counts of first degree murder with a firearm while wearing a mask and one count of robbery with a firearm while wearing a mask. The indictments concerned a convenience store robbery occurring around 11:46 p.m., in which two store clerks were killed. A significant portion of the crime was captured on surveillance video, but due to the masks, the faces of the assailants could not be discerned. From the video, it was established that one of the assailants had a handgun and the other one had a rifle. A video production manager testified that he calculated the time between the first gunman entering the

store and the last gunman leaving the store as forty-eight seconds. He also calculated the time between when the last gunman exited the store and when the first police officer entered the store, as four minutes and fifty-five seconds.

There were no eyewitnesses to the crimes, but there was an eyewitness in the neighborhood who heard shots and saw two figures running from the area of the convenience store. The eyewitness saw one of the figures running with what appeared to be a pistol. There was no fingerprint or DNA evidence linking Alvarez to the crimes. Alvarez did not make any inculpatory statements to law enforcement.

Two weeks after the crime, Alvarez's codefendant was apprehended after a chase. During the chase, the codefendant was seen throwing a firearm into a lake adjoining an apartment community. Five weeks after the codefendant's arrest, the firearm was recovered. A firearm examiner testified that a projectile recovered from the convenience store was fired from the handgun recovered from the lake. The handgun was admitted into evidence. The long gun used during the crimes was never recovered.

The State introduced the testimony of I.M., a federal prisoner, who testified he met Alvarez in early 2010 (a few months before the crime) because Alvarez wanted to buy some guns. The State entered two pictures into evidence, each showing a gun purchased by Alvarez from I.M., one a handgun and one a "long weapon." When I.M. was shown the handgun admitted into evidence, he initially said the handgun did not look like the handgun in the picture that he sold to Alvarez, but later clarified that both guns looked the same, except that the handgun admitted into evidence looked more "oxidized" than the gun in the picture.

Another key witness for the State was M.G. She testified that shortly after 9:00 p.m. on the night of the crimes, she received a text message from Alvarez to pick him up. In the past, she had frequently driven Alvarez places in exchange for gas money. She picked up Alvarez at the same apartment community where the handgun was thrown into the lake two weeks later, and drove him to another nearby apartment complex to pick up Alvarez's codefendant. As she had frequently seen in the past, Alvarez was carrying a backpack that night. She then drove both of them to a community park close to the convenience store where the crimes occurred. Alvarez and his codefendant left the car acting "normal." Alvarez told her he would be back. She sat in the car playing music. She did not hear any gunshots, but a short time later, Alvarez and his codefendant came back to the vehicle "hyped up" and "rushed." She asked the two what was wrong, but Alvarez told her that everything was fine and to just go. When

2

she looked at the codefendant in the rear-view mirror, he had a "bigger gun." She further testified that Alvarez contacted her the next morning to meet with her, which she stated was unusual, and when they met, he told her not to worry and everything was all right. On cross-examination, when shown pictures of the two guns I.M. sold to Alvarez, M.G. testified she did not see Alvarez that night with either gun (no testimony was elicited as to whether M.G. saw the co-defendant with either gun that night).

Another officer testified to using the cellphone records obtained for Alvarez's phone to determine the cellphone location at certain times on the night of the crimes, based on cellphone tower data. He testified that there was information logged from phone calls at 11:39 p.m. and 11:53 p.m., which was around the time of the crimes. At 11:39 p.m., an unanswered outgoing call from Alvarez's cellphone hit a tower near the convenience store.

There was also evidence of text messages between Alvarez and others. At 11:47 p.m. on the night of the crimes, Alvarez sent a text message to a friend who lived about a mile-and-a-half from the convenience store to "open up" (suggesting Alvarez was seeking shelter after fleeing). Another exchange involved messages between Alvarez and a friend living at the apartment complex where the handgun was recovered. The message from the friend stating: "Them boys in the back with scubas lurking in the lake for something," was sent at the same time that divers were searching the lake after the codefendant had been seen discarding the firearm into the lake. Alvarez responded twenty-seven seconds later: "Yeah, I know, just pray."

After the State rested, Alvarez moved for a judgment of acquittal, which was denied. Alvarez rested without putting on any evidence. In closing argument, Alvarez argued there was insufficient evidence to place him at the convenience store at the time of the crimes and this was a case of mistaken identity. The jury found Alvarez guilty of all three counts as charged and, by an interrogatory verdict, found that Alvarez possessed a firearm, discharged a firearm, and wore a mask during the robbery. Alvarez was adjudicated guilty of all three counts and sentenced to three consecutive life sentences. Alvarez gave notice of appeal.

*Analysis*

"Appellate review of the denial of a motion for judgment of acquittal is *de novo.*" *Burkell v. State,* 992 So. 2d 848, 851 (Fla. 4th DCA 2008) (citing *Reynolds v. State,* 934 So. 2d 1128, 1145 (Fla. 2006)).

The State proceeded to trial on two theories: premeditated murder and

3

felony murder. For both theories, the evidence as to Alvarez's identity as one of the assailants and his acts in engaging in the crimes was circumstantial. We therefore apply the special standard of review applicable in such cases to determine if the State presented sufficient evidence to affirm the denial of Alvarez's motion for judgment of acquittal. *See Knight v. State*, 186 So. 3d 1005, 1010 (Fla. 2016) ("We now expressly hold that the circumstantial evidence standard of review applies only where all of the evidence of a defendant's guilt—i.e., the evidence tending to show that the defendant committed or participated in the crime—is circumstantial, not where any particular element of a crime is demonstrated exclusively by circumstantial evidence.") Our supreme court has explained that under the special standard, "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt[,] a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." *Id.* at 1009 (alterations in original) (quoting *Jaramillo v. State*, 417 So. 2d 257, 257 (Fla. 1982)). Stated another way, the State "must introduce competent evidence which is inconsistent with the defendant's theory of events." *Johnston v. State*, 863 So. 2d 271, 283 (Fla. 2003) (citing *Daring v. State*, 808 So. 2d 145, 156 (Fla. 2002)). As this Court has said, "[e]vidence which furnishes nothing more than a suspicion that the defendant committed the crime is not sufficient to uphold a conviction." *DeJesus v. State*, 225 So. 3d 285, 288 (Fla. 4th DCA 2017) (quoting *Garcia v. State*, 899 So. 2d 447, 449 (Fla. 4th DCA 2005)).

In *DeJesus*, we recently recognized there can be persuasive strength from cumulative evidence, but stressed the importance of not allowing strong cumulative evidence to lead to a misapplication of the special standard of review. *Id.* at 290. We reversed the conviction against DeJesus because, there, the circumstantial evidence did not place DeJesus at the scene of the crime and did not rebut his reasonable hypothesis of innocence that he was elsewhere at the time of the crime. *Id.* Our review of the evidence in this case leads us to a different conclusion.

In this case, there was much more than evidence from cellphone records placing Alvarez in the vicinity of the crimes at the time they occurred. There was also evidence linking Alvarez as the supplier of one, if not both, of the guns used during the crimes. More importantly, while there were no inculpatory statements to law enforcement, there was evidence of other statements and conduct immediately after the crimes and days later which clearly showed consciousness of guilt. Such evidence was sufficient to rebut Alvarez's hypothesis of innocence. Having determined the trial court did not err in denying Alvarez's motion for

judgment of acquittal, we affirm.

*Affirmed.*

WARNER and KUNTZ, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***